PEOPLE v SHAKUR

Docket No. 283360. Submitted August 12, 2008, at Detroit. Decided
    August 14, 2008, at 9:00 a.m.
    Nursing-home nurse's aides Tahirah H. Shakur, Keisa Y. Cooper, and
        Ericka N. Jackson were charged in the 41-A District Court with the
        misdemeanor offense of physically, mentally, or emotionally abusing,
        mistreating, or harmfully neglecting a patient, MCL 333.21771(1).
        While preparing the body of a deceased nursing-home patient for
        transport to a funeral home, the defendants posed and took pictures
        of the decedent's body. The court, Kimberley A. Wiegand, J., denied
        the defendants' motions to dismiss the charges, rejecting their
        assertion that a dead nursing-home patient cannot be abused, mis-
        treated, or neglected. The Macomb Circuit Court, Mark S. Switalski,
        J., affirmed on appeal. Jackson and Cooper appealed by delayed leave
        granted.

    The Court of Appeals held:

    MCL 333.21715(2) provides, in part, that "[n]ursing care and
    medical care shall consist of services given to individuals who are
    subject to prolonged suffering from illness or injury or who are
    recovering from illness or injury." Under the clear language of
    § 21715(2), the care and services that a patient receives in a
    nursing-home setting are necessarily those provided to a live
    individual. Because the decedent was not receiving such "care and
    services" at the time relevant to this case, the decedent was not a
    "patient" for purposes of MCL 333.21771(1). Accordingly, the
    conduct of the defendants, although reprehensible and disrespect-
    ful, did not constitute a violation of § 21771(1).

    Reversed and remanded for further proceedings.

HEALTH — NURSING HOMES — ABUSE, MISTREATMENT, OR NEGLECT OF PATIENTS.

    The statute that makes it a misdemeanor for a licensed nursing
        home or its personnel to physically, mentally, or emotionally abuse,
        mistreat, or harmfully neglect a patient does not apply to actions
        taken with respect to the body of a deceased nursing-home patient
        (MCL 333.21771[1]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Richard M. C. Adams*, Assistant Attorney General, for the people.

*Joseph Toia* for Keisa Y. Cooper.

*Blanco Wilczynski, P.C.* (by *Derek S. Wilczynski*), for Ericka N. Jackson.

Before: MURRAY, P.J., and WHITBECK and TALBOT, JJ.

TALBOT, J. Defendants, Ericka Nichole Jackson and Keisa Yvette Cooper, appeal by delayed leave granted.[1] Defendants were charged in the district court with violating MCL 333.21771(1), which is a misdemeanor pursuant to MCL 333.21799c(1)(e). The district court denied defendants' motion to quash[2] the complaints and dismiss the charges against them. Defendants appealed to the circuit court, which affirmed the district court's ruling. We reverse and remand.

### I. FACTUAL HISTORY

Defendants worked as nurse's aides at Cherrywood Nursing and Living Center. On October 13, 2004, a resident of the nursing home, Lillian McIntyre, passed away. Although other nurse's aides had been assigned to clean and prepare McIntyre's body for transport to a funeral home, defendants entered the room and took over the task. Defendants posed McIntyre's body by raising her hands in the air, putting her arms behind

---

[1] Although defendant Tahirah Haseena Shakur was involved in the circuit-court appeal, she does not participate in the appeal before this Court.

[2] We use the terminology "to quash" because it was employed by the parties in the lower courts, but construe defendants' respective motions to be more properly considered as motions to dismiss.

her head, and bending her knees. They also patted McIntyre's hand and told her to "wake up." Defendant Tahirah H. Shakur, using the camera on her cellular phone, took a picture of defendants Keisha Y. Cooper and Ericka N. Jackson hugging McIntyre's dead body.

Defendants were suspended from employment pending an investigation and were subsequently fired. The Department of Community Health (DCH), Health Investigation Division, launched an investigation and determined that there was insufficient evidence that defendants had violated the Public Health Code (PHC) and, therefore, did not revoke their nurse's aides licenses. However, the DCH Bureau of Health Systems cited the nursing home for "a violation of patient dignity."

## II. LOWER COURT ARGUMENTS AND RULINGS

Although the DCH ended its investigation against defendants, the Attorney General subsequently charged defendants with physically mistreating a patient in violation of MCL 333.21771(1)[3] of the nursing-homes section of the PHC. Defendants denied the veracity of the allegations and filed motions in the district court to quash the criminal complaints and dismiss the charges against them, asserting, under the plain language of the statute, that McIntyre ceased being a patient when she died. Defendants contended that a deceased person cannot feel and, therefore, cannot be mentally or emotionally abused, mistreated, or harmfully neglected. Moreover, defendants argued that the alleged conduct, i.e., taking pictures of people hugging the deceased, did not amount to abuse or mistreatment.

---

[3] The statutory subsection provides, in relevant part: "A[n] . . . employee of a nursing home shall not physically, mentally, or emotionally abuse, mistreat, or harmfully neglect a patient." MCL 333.21771(1).

The district court denied defendants' motions and noted that MCL 333.21703(1) defines a "patient" as a "person who receives care or services at a nursing home." "Person," in turn, is defined as an "individual, partnership, association, private corporation, personal representative, receiver, trustee, assignee, or other legal entity" under MCL 333.1106(2). The district court then reviewed dictionary definitions and determined that a "patient" is "an object that is capable of receiving treatment." The court noted that the definition did not require the object to be living. The court further reasoned that, if an object is capable of receiving treatment, it is also capable of being mistreated. More specifically, a dead body is capable of receiving treatment such as involving preparation for burial. The district court ruled that the Legislature could have limited MCL 333.21771(1) to living persons had it so intended and the court declined to read such limiting language into the statute. The court further noted that it was the jury's job to determine whether defendants' specific conduct rose to the level of abuse or mistreatment. Thereafter, all three defendants filed applications for leave to appeal to the Macomb Circuit Court, which were granted, and the cases were consolidated.

In the circuit court, defendants argued that MCL 333.21771(1) was inapplicable to their alleged conduct because the victim must be a "patient" and, therefore, must be living. Defendants incorrectly asserted that the term "patient" is not defined under the statute and resorted to dictionary definitions of the term to plead their case. Defendants relied on the definition of "patient" in Black's Law Dictionary (4th ed) as "one who has been committed to the asylum and has remained there for care and treatment," and *Merriam-Webster Dictionary*'s definition as "a person under medical care." Defendants also relied on dictionary definitions

of "mistreat" as "to treat badly; abuse" and "neglect" as "disregard; to leave undone or unattended, especially through carelessness; omit; ignore; overlook; forget." Defendants then argued that the plain language of the statute evinces the Legislature's intent to protect only living nursing-home residents because it does not specifically mention deceased residents. Further, the statute speaks of physical, mental, or emotional harm, which defendants asserted could only be inflicted on a living person. On the basis of this language, defendants argued that the body of a recently deceased person cannot be a "patient" and, therefore, is not protected by the statute. Defendants also relied on *People v Hutner*, 209 Mich App 280; 530 NW2d 174 (1995), in which this Court found that a dead body could not consent, or deny consent, to sexual acts to support their assertion that a person must be alive to suffer the physical and emotional effects of mistreatment in order to be covered by the statute.[4]

In response, the prosecutor noted that McIntyre clearly received care or services from Cherrywood while she was alive. The question remained whether MCL 333.21771(1) required a "person" to be living to continue to receive the protections of the statute. Specifically, the prosecutor noted that, contrary to defendants' reliance on *Hutner*, "mistreatment" does not require an injury or suffering by the victim. Accordingly, the victim need not be alive like the victim of criminal sexual conduct (CSC), who must deny consent to a sexual act. Therefore, a dead body should be considered a patient pursuant to MCL 333.21771(1).

---

[4] Specifically, this Court ruled, "A dead body is not a person .... A dead body has no will to overcome. It does not have the same potential to suffer physically or mentally as a live or even an unconscious or dying victim." *Hutner, supra* at 284.

The circuit court affirmed the district court's order denying defendants' motions to quash the complaints and dismiss the charges. The circuit court reviewed the statutory definitions and further noted that the PHC defines "individual" as "a natural person." MCL 333.1105(1). Although the Legislature failed to define "natural person" and, therefore, did not specifically indicate whether he or she could be deceased, the circuit court noted that the Legislature did differentiate between living and dead persons in numerous statutes in the PHC. Accordingly, the court determined that the Legislature must have purposefully omitted such language in MCL 333.21771(1). The circuit court then noted that McIntyre continued to be a "patient" under the definition of MCL 333.21703(1) because she was still receiving treatment when her body was being prepared for transfer to a funeral home.

The circuit court also rejected defendants' reliance on *Hutner*, *supra*, for the proposition that a deceased person cannot suffer physically, mentally, or emotionally and, therefore, is not protected under MCL 333.21771(1). The court first noted that *Hutner* involved a charge of third-degree CSC. An element of that offense is a nonconsensual sexual act, which requires a living person to either consent or deny consent. The circuit court parsed out the phrases in MCL 333.21771(1) and determined that the qualifying phrase "physically, mentally or emotionally" applies only to "abuse." Similarly, the phrase "harmfully" applies only to "neglect." Accordingly, the circuit court determined that the prosecutor needed only to demonstrate that defendants "mistreated" McIntyre to pursue the current charges. The court then found, "While a person would arguably have to be alive to suffer physical, mental or emotional abuse, a person need not be alive to

suffer mistreatment" and that an inanimate object might be "treated badly."

### III. STANDARD OF REVIEW

We review questions of statutory interpretation de novo. *People v Buehler,* 477 Mich 18, 23; 727 NW2d 127 (2007).

### IV. ANALYSIS

The sole issue on appeal involves the interpretation of MCL 333.21771(1) of the PHC. Specifically, the dispute centers on whether a deceased person can be considered a "patient" subject to mistreatment, abuse, or neglect. As previously discussed by this Court:

> The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. However, if reasonable minds can differ regarding the meaning of the statute, judicial construction is appropriate. [*USAA Ins Co v Houston Gen Ins Co,* 220 Mich App 386, 389-390; 559 NW2d 98 (1996) (citations omitted).]

In addition:

> Statutes that relate to the same subject or that share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. "Statutes relate to the same subject if they relate to the same person or thing or the same class of persons or things." The object of the *in pari materia* rule is to give effect to the legislative intent expressed in harmonious statutes. If statutes lend

themselves to a construction that avoids conflict, that construction should control. [*Walters v Leech,* 279 Mich App 707, 709-710; ___ NW2d ___ (2008) (citations omitted).]

When interpreting a statute, we rely on its plain language and are precluded from "read[ing] into a statute language that was not placed there by the Legislature." *Risk v Lincoln Charter Twp Bd of Trustees,* 279 Mich App 389, 399; ___ NW2d ___ (2008).

Defendants were charged with violating MCL 333.21771(1), which provides, in part: "A licensee, nursing home administrator, or employee of a nursing home shall not physically, mentally, or emotionally abuse, mistreat, or harmfully neglect a patient." The subsequent debate and rulings from the lower courts focused on whether a deceased individual qualified as a "patient" for invocation of the statute. MCL 333.21703(1) defines "patient" as "a person who receives care or services at a nursing home." MCL 333.1106(2) defines a "person" as "an individual, partnership, cooperative, association, private corporation, personal representative, receiver, trustee, assignee, or other legal entity." An "individual" is further defined by MCL 333.1105(1) as a "natural person." Unfortunately, the Legislature failed to define the term "natural person" within the PHC. This omission led the lower courts and parties to pursue a definition of the term "natural person," through use of a variety of dictionaries, to determine whether the term encompasses both living and deceased individuals. We note that these efforts were not particularly fruitful as the various definitions cited by the respective parties and the courts were circular in nature and provided no meaningful insight into the intent or meaning of the statutory language.

Instead, we look solely to the provisions of the statute to determine the meaning of these ordinary terms and whether they were intended to apply to the specific factual circumstances presented in this case. As noted, a "patient" is defined as "a person who receives care or services at a nursing home." MCL 333.21703(1). What a nursing home is mandated to provide with regard to "care and services" is delineated in MCL 333.21715, which states, in relevant part:

> (1) A nursing home shall provide:
>
> (a) A program of planned and continuing nursing care under the charge of a registered nurse in a skilled facility and a licensed practical nurse with a registered nurse consultant in an intermediate care facility.
>
> (b) A program of planned and continuing medical care under the charge of physicians.
>
> (2) Nursing care and medical care shall consist of services given to individuals who are subject to prolonged suffering from illness or injury or who are recovering from illness or injury. The services shall be within the ability of the home to provide and shall include the functions of medical care such as diagnosis and treatment of an illness; nursing care via assessment, planning, and implementation; evaluation of a patient's health care needs; and the carrying out of required treatment prescribed by a physician.

Given the clear and unambiguous language of MCL 333.21715(2), the care and services that a patient receives in a nursing-home setting are necessarily those provided to a live individual for medical treatment, care, and diagnosis. Because the deceased was not receiving statutorily defined "care and services" at the time relevant to this case, she cannot be construed as a "patient" for purposes of MCL 333.21771(1). Consequently, while we condemn the behavior of defendants and find their actions reprehensible and disrespectful to

the deceased, they do not comprise a violation of the statute. This interpretation is further supported by a separate provision of the PHC that defines a "dead body" as "a human body or fetus, or part of a dead human body or fetus, in a condition from which it may reasonably be concluded that death has occurred." MCL 333.2803(1). Notably, the PHC does not use the term "patient," "person," "individual," or "natural person" to define what constitutes a "dead body." This is consistent with our interpretation of the statutory language as demonstrating the Legislature's intent to protect living patients or residents of nursing homes and provide a mechanism for addressing instances of abuse, mistreatment, and neglect when they occur.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.